

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00861-CV

In the Interest of **N.T.P.**, **C.C.P.**, and **P.C.P.**, Children

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2022-PA-00028
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:      Liza A. Rodriguez, Justice

Sitting:         Luz Elena D. Chapa, Justice
                 Liza A. Rodriguez, Justice
                 Lori I. Valenzuela, Justice

Delivered and Filed: June 7, 2023

AFFIRMED

Appellant S.G. ("Mother") appeals from a judgment terminating her parental rights to her children, N.T.P., C.C.P., and P.C.P.[1] In one issue, Mother argues the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights was in the children's best interest. We affirm.

BACKGROUND

On January 7, 2022, the Texas Department of Family and Protective Services filed its original petition for protection of the children, conservatorship, and termination of parental rights. On January 21, 2022, the trial court held an adversary hearing and rendered temporary orders,

---

[1]To protect the identity of the minor children, we refer to the appellant and the children by their initials. *See* TEX. FAM. CODE. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

appointing the Department temporary managing conservator of the children. Additionally, the trial court's temporary orders ordered Mother to undergo drug testing as directed by the Department; to comply with each requirement set out in the service plan prepared by the Department; and to submit to a psychological evaluation and attend and cooperate fully in counseling sessions to address the specific issues that led to the removal of the children.

On December 6, 2022, the case proceeded to a bench trial. The Department presented the testimony of a caseworker. Mother testified on her own behalf. After hearing the evidence, the trial court signed a judgment terminating Mother's parental rights based on three predicate grounds: (1) constructive abandonment of the children; (2) failure to complete a court-ordered family service plan; and (3) using a controlled substance and failing to complete a court-ordered substance abuse treatment program. *See* TEX. FAM. CODE § 161.001(b)(1)(N),(O),(P). The trial court also found that termination of Mother's parental rights was in the children's best interest. *Id*. § 161.001(b)(2).

Mother now appeals the trial court's termination judgment. On appeal, Mother does not challenge the predicate grounds for termination; however, she does challenge the sufficiency of the evidence to support the trial court's best-interest finding.

### BEST INTEREST AND STANDARD OF REVIEW

To terminate parental rights under section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence that parental rights should be terminated pursuant to one of the predicate grounds in subsection 161.001(b)(1) and that termination of parental rights is in the child's best interest. *See* TEX. FAM. CODE § 161.001(b)(1),(2).

Under Texas law, there is a strong presumption that the best interest of the child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). In determining

whether the child's parent is willing and able to provide the child with a safe environment, we consider the factors listed in section 263.307(b) of the Texas Family Code.[2] TEX. FAM. CODE § 263.307(b). In addition to these statutory factors, we consider the non-exhaustive list of factors set forth by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).[3] "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Evidence that proves one or more statutory ground for termination may also prove that termination is in the child's best interest. *Id*. at 28. "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

In reviewing the legal sufficiency of the evidence to support the trial court's best-interest finding, we look "at all the evidence in the light most favorable to the finding to determine whether

---

[2]These factors are: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system consisting of extended family and friends is available to the child. TEX. FAM. CODE ANN. § 263.307(b).

[3]These factors are: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the child's best interest; (6) the plans for the child by the individuals or the agency seeking custody; (7) the stability of the home or the proposed placement; (8) the parent's acts or omissions indicating that the existing parent-child relationship is not a proper one; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). In reviewing the factual sufficiency of the evidence, we consider disputed or conflicting evidence. *Id.* at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266). Under these standards, the factfinder is the sole judge of the weight and credibility of the evidence. *See In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

## ANALYSIS

In her sole issue, Mother argues the evidence is legally and factually insufficient to support the trial court's best-interest finding.

*Department Caseworker's Testimony*

At trial, a Department caseworker, Marissa Benavides, testified that at the time of trial, the children, N.T.P., C.C.P., and P.C.P., were ages eight, five, and four, respectively. They were removed from Mother's care on January 7, 2022, after the Department received four different referrals for neglectful supervision and physical neglect over a five-month period. Mother was the children's primary caregiver. Benavides explained that at the time of removal the Department had concerns about Mother's drug use, the home environment, and the children's physical well-being due to their rotting teeth. Apart from their poor dental care, the children were healthy.

The Department prepared a family service plan for Mother and Benavides reviewed it with her. Although Mother refused to sign the family service plan, Mother was aware of the services on the plan and what she needed to do to be reunified with the children. The family service plan required Mother to: (1) submit to random drug testing; (2) undergo a drug and alcohol assessment and follow all recommendations including inpatient or outpatient treatment; (3) participate in

individual counseling, (4) participate in weekly one-hour visits with the children; (5) maintain safe, stable, and appropriate housing and allow the Department announced or unannounced access to her home to assess its safety and appropriateness for the children; and (6) maintain legal employment and provide verification of her income and employment to the Department on a monthly basis.

Benavides was concerned that Mother had a long-term pattern of drug use, which she failed to address while the case was pending. Mother told Benavides that she did not use drugs; however, Mother admitted to a service provider that she did use drugs. Mother wholly refused to drug test. Benavides requested that Mother submit to a drug test on twenty-two separate occasions and Mother submitted to none. Although Mother did complete a drug assessment, she wholly refused to attend inpatient drug treatment, even though Benavides found her an available bed on three separate occasions. Mother demonstrated a similar lack of cooperation regarding individual counseling. Mother performed an initial assessment with a counselor, but then refused to sign the paperwork necessary to begin the sessions. As a result, Mother was discharged from individual counseling. Therefore, Mother failed to engage in drug treatment or individual counseling as required by her family service plan. Benavides pointed out that Mother could not legitimately complain that she could not engage in services due to a lack of transportation because some services were offered virtually and Mother had a family member who was willing to drive her to services.

At the beginning of the case, Mother sometimes appeared late for visits with the children or failed to show up at all. However, for at least the last six months, Mother regularly attended her weekly visits with the children. During the visits, Mother acted appropriately. Benavides acknowledged that the children had a bond with Mother. However, Benavides also pointed out that Mother had the opportunity to increase her weekly visits by engaging in her services and

demonstrating her stability and sobriety. Even though Mother was aware of this opportunity to see the children more frequently, she did not take advantage of it.

Mother never provided Benavides access to her home as required by her service plan. Benavides last attempted to conduct a home visit a week before trial, but Mother refused to let her enter, stating that her home was not "presentable." On another occasion, Benavides knocked on the door and she could hear Mother and someone else in the home, but Mother did not answer the door or otherwise respond. Despite Benavides's requests for pay stubs or proof of income and employment, Mother never provided her with anything.

Benavides believed that Mother had four other children and that she had lost custody of all of them.

The three children in this case had remained in the same household while under the Department's care. Initially, the children were placed with their maternal aunt, but she was no longer able to care for them because she was also caring for some of Mother's other children. After living with their aunt, the children were placed in a foster home, where they remained at the time of trial. The current placement was not a foster-to-adopt home, but the children will remain there until the Department locates a foster-to-adopt home for all three children. Benavides felt that there would not be any problem finding a foster-to-adopt home for the children. The Department plans to keep the children together because they are very bonded to each other and do well together.

When they first came into the Department's care, two of the children required dental care, specifically, caps and fillings, which they received. Two of the children had a speech delay, which is being addressed by speech therapy. Otherwise, the children do not have any special needs and do not have any behavioral concerns.

*Mother's Testimony*

Mother asserted that she did not use drugs while this case was pending. The reason Mother refused to drug test was because the case was "going on for so long" and she "just [didn't] feel that [she] should have to go through this." Mother further asserted that she had "cooperated with everything else."

Mother acknowledged that she was ordered to perform certain services and she claimed that she did them. According to Mother, she participated in the drug classes identified by Benavides, and she went to Narcotics Anonymous and Alcoholics Anonymous meetings, but these organizations "cut [her] off" after she missed a group meeting.

Mother claimed that she never denied Benavides access to her home; rather, Benavides never attempted to conduct a visit. According to Mother, she emailed Benavides a few times and requested a home visit, but Benavides did not respond to Mother's emails.

*Application*

"[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE § 263.307(a). In determining whether the child's parent is willing and able to provide the child with a safe environment, we consider the factors listed in section 263.307(b) of the Texas Family Code, including the parent's willingness and ability to accept and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision, and the parent's willingness and ability to effect positive environmental and personal changes within a reasonable period of time. *Id*. § 263.307(b)(10),(11)

Here, there was evidence that Mother failed to participate in individual counseling and in inpatient drug treatment as required. There was also evidence that Mother denied a caseworker access to her home to verify its appropriateness for the children. In so doing, Mother hindered the Department's efforts to determine if Mother could provide the children with a safe and stable

environment. Thus, the evidence demonstrated that Mother was unwilling to complete court-ordered counseling services, to cooperate with and facilitate the Department's close supervision, and to effect positive environmental and personal changes in her life within a reasonable period of time. *See id*.

There was also evidence that Mother had a problem with drug use, which she wholly refused to address during the pendency of the case. Mother never submitted to a single drug test despite twenty-two requests from the Department. "[A] fact finder reasonably can infer that a parent's failure to submit to court-ordered drug tests indicates the parent is avoiding testing because they were using illegal drugs." *See In re E.R.W.*, 528 S.W.3d 251, 265 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

"A parent's drug use supports a finding that termination is in the best interest of the child." *Id.* at 266. "The fact finder can give 'great weight' to the 'significant factor' of drug-related conduct." *Id*. "Illicit drug use is relevant to multiple *Holley* factors, including the children's emotional and physical needs now and in the future, the emotional and physical danger to the children now and in the future, Mother's parental abilities, the stability of Mother's home, and the acts or omissions which may indicate an improper parent-child relationship." *In re A.N.*, No. 04-19-00584-CV, 2020 WL 354773, at *3 (Tex. App.—San Antonio Jan. 22, 2020, no pet.).

Viewing the evidence in the light most favorable to the best-interest finding, the trial court could have reasonably concluded that Mother was incapable of meeting the children's emotional and physical needs now and in the future, that the child's current foster placement was meeting their current emotional and physical needs, and that the Department would ensure that the children's future emotional and physical needs were met by finding them a permanent placement. We conclude a reasonable factfinder could have formed a firm belief or conviction that termination

of Mother's parental rights was in the children's best interest. Accordingly, the evidence is legally sufficient to support the trial court's best-interest finding.

With regard to factual sufficiency, Mother testified that she did not have a drug problem, that she had attended Narcotics Anonymous and Alcoholics Anonymous meetings, and that Benavides rebuffed her offers to conduct a home visit. However, we conclude the disputed evidence is not so significant that the trial court could not reasonably have formed a firm belief or conviction that termination of Mother's parental rights was in the children's best interest. Accordingly, the evidence is factually sufficient to support the trial court's best-interest finding. We overrule Mother's sole issue.

## CONCLUSION

The trial court's judgment is affirmed.

Liza A. Rodriguez, Justice